**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J.P. Morgan Securities LLC,<br><br>    Plaintiff,<br><br>v.<br><br>Seth A. Chamberlain,<br><br>    Defendant. | No. CV-22-01217-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff J.P. Morgan Securities LLC's ("JPMorgan") renewed motion for expedited discovery. (Doc. 24.) The motion is fully briefed. (Docs. 26, 27.)[1] For the following reasons, the motion is granted.

### RELEVANT BACKGROUND

Defendant Seth Chamberlain ("Chamberlain") worked as a private client advisor for JPMorgan until May 27, 2022, when he resigned to take a similar position with non-party Ameriprise Financial Services, LLC ("Ameriprise"). In this action, JPMorgan alleges (among other things) that, following his resignation, Chamberlain made efforts to persuade more than a dozen of his former JPMorgan clients to transfer their accounts to Ameriprise, in violation of a non-solicitation agreement he signed in 2013. (Doc. 1 ¶¶ 2-5, 24.) JPMorgan is also pursuing claims against Chamberlain and Ameriprise in a parallel arbitration proceeding, as required by the Financial Industry Regulatory Authority ("FINRA").

---

[1] JPMorgan's request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

On July 20, 2022, at the same time it initiated this action, JPMorgan filed a "motion for a temporary restraining order, preliminary injunction and an order permitting expedited discovery." (Doc. 2.) In support of this request, JPMorgan filed a declaration from Jamie Cecich, who is "the Market Director for JPMorgan's Chase Wealth Management division in the Mesa market for the Southwest Region, which includes . . . the Mesa, Arizona office in which [Chamberlain] worked." (Doc. 5 ¶ 2.) In this declaration, Cecich avowed that "numerous clients have informed JPMorgan that [Chamberlain] called them after he resigned from JPMorgan seeking to discuss Ameriprise or set up a meeting to discuss transferring their accounts to him at Ameriprise. In some instances, the clients specifically told JPMorgan that [Chamberlain] expressly asked the clients to move their business to him at Ameriprise. I personally spoke with several of these clients." (*Id.* ¶ 6.) In the next three paragraphs, Cecich summarized his conversations with three particular JPMorgan customers who allegedly had been solicited by Chamberlain. (*Id.* ¶¶ 7-9.) Cecich did not, however, identify those customers by name or provide verbatim accounts of his conversations with them. (*Id.*)

On July 21, 2022, the Court issued an order requiring expedited briefing on JPMorgan's motion to the extent it sought a temporary restraining order ("TRO") and setting a TRO hearing for July 29, 2022. (Doc. 11.)

On July 28, 2022, Chamberlain filed an opposition to JPMorgan's motion. (Doc. 15.) Among other things, Chamberlain argued that JPMorgan had not established a likelihood of success on the merits of its solicitation claim because it had "no credible, admissible evidence that [he] actually engaged in misconduct" and instead sought to "rely upon vague, triple hearsay-ridden allegations" and "speculative, layered hearsay evidence copied from previous filings." (*Id.* at 3.) Additionally, Chamberlain submitted his own declaration in which he accused Cecich of "provid[ing] only cherry-picked soundbites from alleged conversations with unnamed and unidentified clients that took place almost a month after my resignation date" and "fail[ing] to provide any context for those conversations." (Doc. 15-1 ¶ 7.) Chamberlain further avowed in his declaration that "[a]n

overarching and constant theme in that context is that I have longstanding relationships with my clients, and many of them independently reached out to me and asked to continue doing business with me." (*Id.* ¶ 8.) Chamberlain concluded: "I . . . have not solicited business from clients. Several clients have exercised their freedom of choice to continue being serviced by me. To date, eighty-nine clients have signed Declarations affirming that they were not solicited. . . . My counsel has submitted an unredacted copy of these declarations to Plaintiff's counsel." (*Id.* ¶ 12.)

On July 29, 2022, at the conclusion of the motion hearing, the Court orally denied JPMorgan's TRO request. (Doc. 17 [minute entry]; Doc. 25 [transcript].) On the one hand, the Court acknowledged that Mr. Cecich's "declaration is admissible, even though it's got several layers of hearsay in it," and that "if [I] were just to look very narrowly at those few paragraphs of Mr. [Cecich's] declaration without looking at any other evidence in the record, there's a bit there that could suggest there's been some solicitation." (Doc. 25 at 47.) On the other hand, the Court noted that "the evidence that Mr. Chamberlain has submitted in response to that cuts the other direction. There's a lot of evidence that he hasn't solicited people." (*Id.* at 47.) The Court concluded that, "as is many times the case in a TRO, the record is really undeveloped here. You've got a little bit of evidence [of solicitation] that [JPMorgan] has presented. In my view you have a bit stronger evidence [of non-solicitation] that Mr. Chamberlain has presented. I think it's stronger because you've got clients at least putting their name to it and swearing to it. And so what I've got right now is a record that has a lot of ambiguities in it, things that need to be fl[e]shed out more. And ultimately, at the TRO stage, . . . the fact that it's undeveloped and is filled with ambiguities basically means you [JPMorgan] lose. Because Ninth Circuit law . . . places a very high burden on the party seeking [the] extraordinary relief of a TRO, and it requires them to make a clear showing as to entitlement to relief. And there might be something there with respect to solicitation, there might not. But it's not a clear showing, it's not a likelihood . . . at this stage of the game." (*Id.* at 48.) For similar reasons, the Court concluded that JPMorgan had not met its burden of establishing that other relevant TRO

factors cut in its favor.  (*Id.* at 50 ["[W]ith respect to the balancing of the equities and the public interest, . . . [it's] derivative of the first factor.  If there were a case where a broker were shown clearly to be violating solicitation agreements, I think that the equities and the public interest would be advanced by enjoining that conduct . . . .  But on the other hand, when, as here, there has not been a showing as to a likelihood of the solicitation violations, . . . [t]here's not a public interest in prophylactically restraining a broker who has not been shown compellingly to have done anything wrong . . . ."].)

After announcing its ruling on JPMorgan's TRO request, the Court addressed the other forms of relief requested in JPMorgan's motion.  First, "to the extent there's a request for expedited discovery," the Court denied that request "without prejudice" but clarified that "if J.P. Morgan wants to come back and renew its request for expedited discovery and lay it out in more detail and ask for an abbreviated briefing schedule with respect to that, that's something I'm open to."  (*Id.* at 52-53.)  Second, to the extent "the motion that's pending is also a motion for a PI [preliminary injunction]," the Court asked JPMorgan to clarify whether "you want to set a separate future date for a PI, or if . . . that's something that is contingent on how this expedited discovery issue might play out."  (*Id.* at 53.)  In response, JPMorgan's counsel clarified that "to the extent that the Court grants [expedited discovery], [that] would then determine . . . when a PI hearing would be."  (*Id.* at 53-54.)

On August 12, 2022, JPMorgan filed the motion now pending before the Court—a renewed motion for expedited discovery.  (Doc. 24.)

On August 26, 2022, Chamberlain filed an opposition.  (Doc. 26.)

On September 2, 2022, JPMorgan filed a reply.  (Doc. 27.)

**DISCUSSION**

I.   <u>Legal Standard</u>

To obtain expedited discovery, a party must demonstrate good cause.  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). *See also Kulkarni v. Upasani*, 659 F. App'x 937, 941 (9th Cir. 2016).  "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs

the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. "In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. The party seeking expedited discovery in advance of the Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures." *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012) (citation omitted).

II.     The Parties' Arguments

JPMorgan seeks permission to conduct "limited expedited discovery" consisting of serving eight requests for production ("RFPs") on Chamberlain, serving a subpoena on Ameriprise seeking seven categories of documents, and then deposing Chamberlain for four hours. (Doc. 24.) JPMorgan states that the applicable "good cause" standard is satisfied here because (1) it has already filed a motion for a preliminary injunction and "courts have regularly ordered expedited discovery in advance of a preliminary injunction hearing"; (2) it only seeks "very limited discovery focused on [Chamberlain's] solicitation efforts after he resigned from JPMorgan"; (3) "the purpose of the discovery is to establish that JPMorgan will likely prevail on the merits of its claims"; (4) the burden on Chamberlain and Ameriprise will be minor given the limited scope of the requests; and (5) "the request will not interfere with the normal discovery process because once the Court rules on JPMorgan's [PI] application, the parties will move to the FINRA arbitration JPMorgan simultaneously commenced with this proceeding—where the FINRA Panel will decide JPMorgan's request for a permanent injunction." (*Id.* at 5-6.)

Chamberlain responds that all five of the relevant "good cause" factors cut against JPMorgan's request to engage in expedited discovery. (Doc. 26.) As for the first factor, Chamberlain argues that, under the applicable FINRA rules, "a party has <u>one</u> opportunity to seek a temporary injunctive order from a court before proceeding to arbitration," and

because the Court previously denied JPMorgan's request for a TRO, it follows that JPMorgan is no longer entitled to seek any relief in this action. (*Id.* at 2, 4-7.) In a related vein, Chamberlain argues that although one of the factors that courts typically consider when evaluating a request for expedited discovery is whether there is a pending request for a preliminary injunction, "no motion for preliminary injunction is pending" here. (*Id.* at 4-7.) As for the second factor, Chamberlain argues that JPMorgan's proposed discovery requests "are overbroad in their mere existence, let alone their content," because Ameriprise is a non-party and the requests go far beyond the limited forms of discovery that JPMorgan would be authorized to pursue in the parallel FINRA arbitration proceeding. (*Id.* at 7-9.) As for the third factor, Chamberlain argues that JPMorgan has not established "that its purpose for requesting expedited discovery is legitimate or weighs in its favor" and that "[t]he true purpose of Plaintiff's application . . . [is] to circumvent the FINRA Code, obtain discovery to which it is not entitled under the FINRA Code, and increase the burden on [Chamberlain] and his employer by making them go through two different and costly discovery processes." (*Id.* at 9-10.) As for the fourth factor, Chamberlain argues that JPMorgan offers only conclusory assertions about the alleged non-burdensomeness of its proposed discovery requests, that "[i]t goes without saying that the discovery sought by [JPMorgan] places an enormous burden on non-party Ameriprise," and that the fact "[t]he discovery sought is . . . not contemplated by the FINRA Rules agreed to by the parties" makes it "additionally burdensome." (*Id.* at 10.) As for the fifth factor, Chamberlain argues that "[t]he requests do in fact interfere with the normal discovery process because the normal discovery process is FINRA's discovery process." (*Id.* at 11-12.) Finally, Chamberlain identifies other cases in which courts have denied requests for expedited discovery due to pending parallel FINRA arbitrations (*id.* at 12-14) and notes that JPMorgan still has not produced a single declaration from a client who claims to have been solicited (*id.* at 14-15).

In reply, JPMorgan argues that (1) the Court continues to possess authority to issue a preliminary injunction under FINRA Rule 13804, notwithstanding the denial of the TRO

request, and the motion for preliminary injunction remains pending (Doc. 27 at 1-3, 6); (2) the proposed discovery requests are narrow in scope, it is necessary to include Ameriprise because Chamberlain would not individually have permission to produce some of the relevant documents, and Chamberlain's arguments regarding the limits on discovery in a FINRA arbitration proceeding are a "red herring" because the FINRA rules contemplate a foray into federal court to seek a preliminary injunction (*id.* at 4-5, 6-7); (3) the purpose of the discovery requests is to support a motion for preliminary injunction, which is "a wholly acceptable purpose," and to flesh out the factual issues that the Court identified during the TRO hearing as requiring further development (*id.* at 5); (4) the burdens on Chamberlain and Ameriprise will be slight because the discovery requests only encompass "documents from a small, finite period of time and relat[e] solely to [Chamberlain's] business-related conduct after his departure from JPMorgan" (*id.*); and (5) courts have repeatedly authorized expedited discovery in non-solicitation cases involving requests for preliminary injunctive relief (*id.* at 5-6). Finally, JPMorgan submits another declaration from Cecich avowing that, since the TRO hearing, more former JPMorgan clients have transferred their accounts to Ameriprise and "[t]wo additional clients reported to JPMorgan that [Chamberlain] called them on their personal cell phones and asked them to meet with him to discuss their accounts." (*Id.* at 2 n.1, citing Doc. 27-4 ¶¶ 3-4.)

II. Analysis

Nearly all of Chamberlain's objections to JPMorgan's request to engage in expedited discovery flow from the premise that the FINRA rules preclude, either expressly or in spirit, the pursuit of discovery and a preliminary injunction once a TRO request has been denied. But that premise is mistaken. FINRA Rule 13804(a) provides that "[i]n industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction. Parties to a pending arbitration may seek a temporary injunctive order from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph, provided that an arbitration hearing on a request for

permanent injunctive relief pursuant to paragraph (b) of this rule has not yet begun." *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13804. Critically, FINRA Rule 13100(ff) further provides that "[t]he term 'temporary injunctive order' means a temporary restraining order, preliminary injunction or other form of initial, temporary injunctive relief." *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules/13100. Thus, under FINRA Rule 13804(a) as clarified by FINRA Rule 13100(ff), although JPMorgan must proceed in an arbitral forum in this "industry dispute" to the extent it wishes to obtain permanent injunctive relief, JPMorgan is permitted to go to federal court to obtain temporary forms of injunctive relief, which include both a TRO and a preliminary injunction. Put another way, although JPMorgan's earlier attempt to obtain a TRO was unsuccessful, JPMorgan remains free to seek a preliminary injunction. *See, e.g.*, *Fid. Brokerage Servs., LLC v. Guadagnino*, 2019 WL 7371822, *1 (S.D. Fla. 2019) (rejecting defendant's argument "that Fidelity is not entitled to the procedural mechanism of obtaining preliminary injunctive relief in this Court pursuant to FINRA Rules and applicable law" because "even a cursory examination of relevant law indicates that . . . [Fidelity] is entitled to seek such relief in this Court"); *Primerica Fin. Servs., Inc. v. Charnot*, 2016 WL 7510248, *3 (N.D. Ill. 2016) ("Charnot contends that FINRA rules preclude PFSI from seeking a preliminary injunction in this Court, as opposed to a temporary restraining order, which it already has. The argument . . . is unpersuasive in light of FINRA Rule 13100(aa) [now Rule 13100(ff)], which defines 'temporary injunctive order' as 'a temporary restraining order, preliminary injunction or other form of initial, temporary injunctive relief.'") (citations omitted). And indeed, JPMorgan has made a request for a preliminary injunction and that request remains pending—although JPMorgan sought both forms of temporary injunctive relief in its motion filed on July 20, 2022 (Doc. 2), the Court made clear during the July 29, 2022 hearing that it was only denying the TRO component of this request while leaving for another day the resolution of the preliminary-injunction component (Doc. 25 at 45-55).

For related reasons, the Court is unpersuaded by Chamberlain's argument that

authorizing the requested discovery would conflict with the limitations on discovery that apply in the FINRA arbitral forum. FINRA Rule 13804(a) expressly contemplates litigation activity in two different forums, with the litigation activity outside the arbitral forum (*i.e.*, in "the court of competent jurisdiction") potentially encompassing a request for a preliminary injunction. Nothing in FINRA Rule 13804(a), or in any of the other FINRA rules cited in Chamberlain's brief, suggests that such preliminary-injunction proceedings should be conducted in a manner that departs from the usual practice of the overseeing court. *Hilliard v. Clark*, 2007 WL 2458140, *2 (W.D. Mich. 2007) ("Rule 13804 permits a party to seek 'temporary injunctive relief.' Nothing in Rule 13804 explicitly compels a court to refrain from permitting discovery before the arbitration hearing occurs. . . . Had FINRA intended the interpretation offered by Defendants, it could have clearly expressed such intent in the rules.") (citations omitted). And as JPMorgan correctly notes in its motion papers, federal courts frequently authorize expedited discovery of the sort sought here in non-solicitation cases involving a request for a preliminary injunction. *See, e.g.*, *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2017 WL 3783017, *2 (E.D. Cal. 2017) (granting motion for expedited discovery where "Roadrunner asserts that expedited discovery is needed to ascertain the extent of harm caused by TGS and Cox's wrongful solicitation of Roadrunner's employees, contractors, drivers and customers in violation of the non-competition, non-solicitation, and confidential information provisions of the SPA"); *First Option Mortg., LLC v. Tabbert*, 2012 WL 1669430, *4 (D. Nev. 2012) (granting motion for expedited discovery, even though TRO request was denied, "[i]n light of the pending motion for preliminary injunction" and where there was evidence that the "transitioning and referral of customers to defendant Prospect occurred while defendant Tabbert was working for plaintiff First Option").

Once his FINRA-related objections are stripped away, Chamberlain has relatively little to say about the actual substance of JPMorgan's proposed discovery requests. Chamberlain does not, for example, dispute JPMorgan's contention that the discovery requests are narrowly tailored to obtain only documents that relate to JPMorgan's non-

solicitation claim. Nor does Chamberlain dispute that it is necessary for JPMorgan to subpoena Ameriprise because he may individually lack authority to gather and produce some of the relevant documents. At bottom, all of Chamberlain's arguments regarding burden and prejudice are the normal burdens that any litigant (or third-party subpoena recipient) would incur when presented with a legitimate discovery request.

For these reasons, the Court concludes that JPMorgan has met its burden of establishing good cause to engage in expedited discovery. As noted, the five factors that courts typically consider when evaluating such a request are "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Rovio Entm't*, 907 F. Supp. 2d at 1099. Here, all five factors support JPMorgan— a preliminary injunction request is pending, the proposed discovery requests are relatively narrow in scope, JPMorgan's purpose (*i.e.*, to obtain evidence necessary to support its pending request for a preliminary injunction on its non-solicitation claim) is legitimate, the burdens to Chamberlain and Ameriprise are relatively modest, and the request is not premature because, given the unusual interplay between the litigation in this forum and in the arbitral forum, this will be JPMorgan's only opportunity to pursue discovery here. Although the Court continues to be troubled, as it was during the TRO hearing, by JPMorgan's failure to provide specifics concerning the phone calls it has purportedly received from customers regarding Chamberlain's alleged solicitation efforts—Cecich's most recent declaration, like his previous one, simply offers vague summaries of conversations with unspecified individuals—this observation does not undermine the overall conclusion that good cause to engage in expedited discovery is present.

…

…

…

…

Accordingly,

**IT IS ORDERED** that JPMorgan's renewed motion for expedited discovery (Doc. 24) is **granted**.

Dated this 7th day of September, 2022.

Dominic W. Lanza
United States District Judge